UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WILLIAM M. KIDD,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | No. CV 12-9982-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 30, 2012, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 8, 2013, and January 11, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on October 24, 2013, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 26, 1962. [Administrative Record ("AR") at 151.] He has a twelfth grade education [AR at 57, 109], and past relevant work experience as a delivery-truck driver. [AR at 152, 325.]

Plaintiff filed an application for Disability Insurance Benefits on June 18, 2007, and protectively filed an application for Supplemental Security Income payments on May 22, 2009, alleging that he has been unable to work since February 13, 2007. [AR at 159, 281-87, 304-07.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 180-83, 188-93, 195.] A hearing was held on August 5, 2009, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 54-78.] A vocational expert also testified. [AR at 71-77.] On December 4, 2009, the ALJ determined that plaintiff was not disabled. [AR at 156-69.] The Appeals Council granted plaintiff's request for review of the decision on July 2, 2010, and remanded for further administrative proceedings. [AR at 175-79.] On December 20, 2010, a second hearing was held before the same ALJ. [AR at 79-142.] On May 19, 2011, the ALJ issued a second decision finding that plaintiff was not disabled. [AR at 24-41.] When the Appeals Council denied plaintiff's request for review of the ALJ's May 19, 2011, decision, that decision became final. [AR at 10-17, 22-23.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since February 13, 2007, his alleged disability onset date. [AR at 29.][1] At step two, the ALJ concluded that plaintiff has the severe impairments of lumbar degenerative disc disease; longstanding contractures of the right 4th and 5th fingers; obesity; and a depressive disorder not otherwise specified. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments in the Listing. [AR at 31.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "including lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking for 6 hours in an 8-hour workday, and sitting for up to 6 out of 8 hours, except he cannot perform postural activities more than occasionally; he cannot use his right (dominant) hand more than frequently; and he is restricted to simple tasks involving only limited contact with co-workers and the public."

---

[1]  The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. [AR at 29.]

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  [AR at 32.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant
2  work as a service-parts driver and tractor-trailer truck driver. [AR at 40.] At step five, the ALJ
3  concluded that there are jobs existing in significant numbers in the national economy that plaintiff
4  can perform. [Id.] Accordingly, the ALJ determined that plaintiff has not been under a disability
5  at any time from February 13, 2007, through May 19, 2011, the date of the decision. [AR at 41.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly rejected the opinion of examining physician, Dr. Warren Yu. [JS at 4, 5-8, 11-12.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. "The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. See id. at 830-31.

On August 30, 2007, Dr. Jeff Altman performed a complete orthopedic evaluation of plaintiff on behalf of the Commissioner. [AR at 602-05.] With regard to plaintiff's hands, Dr. Altman noted "a contracture deformity at the PIP joint of digit #5 at 90 degrees; he was not able to extend. There are also some mild flexion contracture to digits 2 and 3." [AR at 603.] Upon examination of plaintiff's back, Dr. Altman stated that "[t]here is some general tenderness in the lower spinous processes as well as in the right S1 joint and right lumbar paraspinals." [AR at 603-04.] Plaintiff's straight leg raising was "30 degrees in the left and about 10 degrees on the right in the supine position," which appeared to be "somewhat slightly proportionate to effort." [AR at 604.] Dr.

Altman also indicated that "there [was] decreased sensation in the entire right lower extremity." [Id.] Upon reviewing an MRI of the lumbar spine, Dr. Altman noted "3-mm disc bulges at the lower L4-L5 and L5-S1 level." [AR at 602.] Finally, Dr. Altman opined that plaintiff would be limited to "[p]ushing, pulling, lifting, and carrying . . . 25 pounds occasionally and 10 pounds frequently," walking and/or standing "for six hours in an eight-hour workday," sitting for "six hours in an eight-hour workday," performing postural activities "on a frequent basis," and performing manipulative activities with the right hand on a frequent basis. [AR at 605.]

On September 12, 2007, a non-examining physician opined that plaintiff's RFC limited him to occasionally lifting and/or carrying up to 20 pounds, frequently lifting and/or carrying up to 10 pounds, standing and/or walking for a total of six hours in an eight-hour workday, and sitting for a total of six hours in an eight-hour workday. [AR at 608.] The same assessment found plaintiff unlimited with regard to pushing and/or pulling. [AR at 607-12.]

On April 2, 2011, Dr. Yu completed an orthopedic evaluation of plaintiff on behalf of the Commissioner. [AR at 1157-67.] Dr. Yu noted that plaintiff's history of back pain began with a car accident in February 2007 and that plaintiff subsequently "was diagnosed with two degenerative disks with anular tears at both L4-5 and L5-S1." [AR at 1157.] Dr. Yu explained that "[e]xamination reveals significant lumbosacral guarding and lumbosacral myofascial tenderness. [Plaintiff] was able to squat, but had severe pain. He had severe pain on extension and bending in any direction." [AR at 1158.] He also noted that plaintiff experienced back pain on "straight leg raising." [AR at 1158.] Dr. Yu's neurological examination of plaintiff revealed "paresthesias in the posterior thighs, but no objective numbness." [AR at 1159-60.] Dr. Yu diagnosed plaintiff with "Dupuytren's contracture, mild, fourth and fifth digits right hand," and "[l]ow back pain with underlying disk degeneration and anular tears, L4-5 and L5-S1." [AR at 1160.] Finally, Dr. Yu opined that:

> [plaintiff] should be able to walk without an assistive device. [Plaintiff] should be able to sit for up to six hours in an eight-hour day. He should be able to stand or walk for up to two hours in an eight-hour day. He should occasionally be allowed to pick up 20 pounds and frequently 10 pounds. [Plaintiff] should have frequent use of the right upper extremity and free use of the left upper extremity for pushing, pulling, fine finger motor movements, handling and fingering. He

6

> should be limited to only occasional squatting, stooping, kneeling, crawling, climbing, bending or lifting.

[AR at 1160-61.]

In her decision, the ALJ rejected Dr. Yu's opinion "to the extent [he] indicated [plaintiff] can only stand/walk for less than 6 out of 8 hours . . . because it is not supported by his clinical findings, and no explanation was provided for this weakness." [AR at 36.] Instead, in determining how long plaintiff could stand and/or walk in an eight-hour day, the ALJ relied on Dr. Altman's opinion. [AR at 605.] The ALJ noted that after Dr. Altman's examination, a non-examining physician "reviewed the documentary evidence and similarly opined that [plaintiff] would be capable of performing light work, including lifting and carrying 20 pounds occasionally and 10 pounds frequently, and standing and/or walking for 6 out of 8 hours, with the same non-exertional limitations assessed by Dr. Altman." [AR at 34, 608-09.]

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Yu's opinion regarding how long plaintiff could stand and/or walk in an eight-hour workday. The ALJ's bare assertion that Dr. Yu's opinion was not supported by his clinical findings does not constitute a legally valid reason for rejecting Dr. Yu's opinion because it fails to reach the level of specificity required for rejecting an examining physician's opinion. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted); Berg v. Astrue, 2012 WL 1379046, at *2 (W.D. Wash. Mar. 28, 2012) (ALJ's rejection of examining physician's opinion on the ground that it was unsupported by the objective medical evidence was "a conclusory finding and not sufficient grounds to reject an examining doctor's opinion" under Embrey); Kohzad v. Astrue, 2009 WL 596609, at *6 (C.D. Cal. Mar. 3, 2009) (same).

In any event, Dr. Yu's opinion regarding plaintiff's ability to stand and/or walk for only up to two hours in an eight hour workday was supported by clinical findings that provided the basis

for his opinion.[3] Specifically, as noted above, Dr. Yu's examination revealed significant lumbosacral guarding and lumbosacral myofascial tenderness. [AR at 1158.] Dr. Yu also noted severe pain upon movement with reduced range of motion and back pain upon straight leg raising, and diagnosed low back pain with underlying disk degeneration and anular tears. [AR at 1158, 1160.]

The Court also notes that, in assessing plaintiff's RFC, the ALJ appears to have selectively relied on only those portions of the record that supported her desired outcome. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (citation omitted). In particular, by ordering Dr. Yu's examination in 2011, the ALJ apparently determined that the 2007 opinions of Dr. Altman and the non-examining physician were stale or otherwise inadequate. The ALJ nevertheless relied on Dr. Altman's and the non-examining physician's opinions (although those doctors did not have the benefit of Dr. Yu's recent assessment) to reject only that portion of Dr. Yu's assessment that did not comport with her RFC finding that plaintiff could perform a limited range of light work. See Lester, 81 F.3d at 833 (treating physician's more recent opinion based upon more complete record was entitled to more weight than earlier opinion); Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985) (where plaintiff's condition was progressively deteriorating, the most recent medical findings were more probative than medical evaluations from several months earlier).

Finally, defendant maintains that the ALJ properly rejected Dr. Yu's opinion because his examination was "nearly identical, objectively," to Dr. Altman's, such that the "only thing that could

---

[3] The Court notes that Dr. Yu's opinion regarding plaintiff's limited ability to stand and/or walk is also consistent with and supported by the findings of plaintiff's treating physicians. [Compare, e.g., AR at 1160-61 with id. at 1140.]

explain their different assessments is the weight they gave to Plaintiff's subjective complaints." [JS at 10.] Defendant's contention is unpersuasive. First, the ALJ did not state that she rejected Dr. Yu's opinion because it was based on plaintiff's subjective complaints, and "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted). Further, there is nothing in the record to suggest that Dr. Yu's opinion was based solely on plaintiff's subjective complaints. Rather, because Dr. Yu's opinion was offered nearly four years after Dr. Altman's and was based on a complete orthopedic examination, it is reasonable to infer that Dr. Yu simply had a different opinion than Dr. Altman regarding the functional limitations resulting from plaintiff's back impairment. Moreover, given the passage of almost four years between the examinations of Dr. Altman and Dr. Yu, it is quite possible that plaintiff's back impairment deteriorated, resulting in greater limitations.

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Yu's opinion. As a result, the ALJ's opinion is not supported by substantial evidence and remand is warranted.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Here, there are outstanding issues that must be resolved before a final determination can be made. However, in an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Yu's opinion (despite the matter having previously been remanded for further consideration

of examining source opinions), on remand, Dr. Yu's opinion shall be credited as a matter of law. See Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006) ("Because the ALJ failed to provide adequate reasons for rejecting [the examining physician]'s opinion, we credit it as a matter of law."); Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (crediting, as a matter of law, improperly rejected treating physician opinions); see also Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (remanding for payment of benefits where the Commissioner did not provide adequate reasons for disregarding examining physician's opinion).  Next, the ALJ shall reassess plaintiff's RFC.  Thereafter, with the assistance of a vocational expert, the ALJ shall, at step five, determine what work, if any, plaintiff can perform.[4]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 7, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[4] Nothing in this decision is intended to disturb the ALJ's step four finding that plaintiff cannot perform his past relevant work.  [See AR at 40.]

10